**STATE of Missouri, Plaintiff-Respondent,**

v.

**George Randall BIDDY, Defendant-Appellant.**

No. 52880.

Missouri Court of Appeals, Eastern District, Division Four.

Feb. 23, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 30, 1988.

Application to Transfer Denied May 17, 1988.

David Ferman, Asst. Public Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Jared R. Cone, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SIMON, Presiding Judge.

Appellant, George Randall Biddy, appeals his convictions by a jury in the Circuit Court of the City of St. Louis for Forcible

Rape § 566.030 RSMo (1986) (all further references herein to RSMo shall be to (1986) unless otherwise noted), Burglary First Degree § 569.160 RSMo, and making a False Declaration § 575.060 RSMo. On appeal, appellant contends the trial court erred in: (1) overruling his motion to suppress written and oral statements because said statements were involuntary; (2) overruling defense counsel's objection to the testimony of the court-appointed psychologist because his testimony varied from the report submitted under § 552.020 RSMo; and, (3) overruling defense counsel's objection to the assistant circuit attorney's comment in closing argument that, "The doctors don't want him," in referring to appellant, because such argument was prejudicial and inflammatory. We affirm.

Viewed in the light most favorable to the verdict, the facts are as follows: In the early morning hours of May 5, 1986, the victim had fallen asleep on her couch while watching television. The victim was awakened suddenly by a man who entered her apartment through her bedroom window. He jumped on top of her, put his arm around her neck and put his hand over her mouth. The man forced the victim into her bedroom. As the victim struggled to break loose, the perpetrator's arm tightened around her throat and she blacked out. When she regained consciousness, the man said, "Don't fuck with me. I'm a sick person. Only a sick person would do this." The victim was raped in her bedroom. She dialed 911 almost immediately after the rapist fled.

When the police arrived the victim gave a description of the rapist which was broadcast on police channels. The rapist was wearing gray corduroy or faded blue denim pants with a dark, hooded sweatshirt. The victim noticed that the rapist wore a watch with a smooth, gold or silver clasp. She also observed that he spoke in a southern accent and that he had long, straight, dark hair. The victim never saw his face because he was always behind her.

Shortly thereafter, because he matched the broadcast description, appellant was picked up by police a few blocks from the victim's apartment. He told the police that his name was Kenneth Tate. Police drove appellant to the victim's apartment for identification. The victim recognized his voice after appellant repeated statements the victim heard during the attack.

Appellant was arrested and brought to police headquarters. He was advised of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed 2d 694 (1966), numerous times. Around 6:00 a.m. that same morning, he told police that he did not want to make a statement. He did not, however, ask to see a lawyer. Questioning of appellant regarding the rape ceased after he declined to make a statement.

Sometime that same day the police determined that Kenneth Tate was not appellant's real name. At 1:40 p.m. police again advised appellant of his *Miranda* rights and resumed questioning to determine why he gave the police a false name. Once again, appellant did not request legal counsel. During this questioning which lasted one hour and forty minutes, appellant made an oral statement amounting to a confession of the rape and made the following written statement:

> I, George Randall Biddy, want to make the following statement: I came home and was drank. I fix something to eat and smoke a joint. I was to get a coke. I got lost walking up and down street. Saw a girl in window. Went in window. She was on bed. Raped her and left.

Appellant filed a motion to suppress the written and oral statements before the trial. The motion was denied.

Appellant pleaded not guilty by reason of mental disease or defect excluding responsibility and moved the court for a psychological evaluation. The evaluation was performed by Dr. Max Givon, a psychologist. In his written evaluation Dr. Givon found appellant to be suffering from schizophrenia, undifferentiated, chronic, on Axis One (i.e., of the American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders, Third Edition, hereinafter DSM–III.) and antisocial traits on Axis Two. Axis One is the diagnosis of the

major illness and Axis Two refers to character disorders. At trial, however, Dr. Givon stated that he had changed his diagnosis of appellant to antisocial personality disorder. He further testified that appellant may be a malingerer, one who deliberately fakes symptoms in order to present oneself as being mentally ill. Dr. Givon decided later that appellant's story of an imaginary creature which occasionally invaded his body was "pure invention." Despite the change in his diagnosis, Dr. Givon's conclusion remained the same: appellant, at the time of the crime, "retained his ability to know and appreciate the nature, quality, and wrongfulness of his conduct and was capable of conforming his conduct to the requirements of the law." He further testified that appellant's condition did not warrant hospitalization.

Appellant presented the testimony of a psychiatrist, Dr. R. Raymond Knowles, to verify appellant's claim of mental disease or defect. Because of time constraints, Dr. Knowles testified out of turn and before Dr. Givon's testimony. Dr. Knowles found appellant's belief of the imaginary creature to be valid and that appellant suffered from schizo-affective psychosis. Dr. Knowles testified that although appellant at the time of the crime, "knew and appreciated the nature, quality and wrongfulness of his act," appellant was "unable to conform his conduct to the requirements of the law." Dr. Knowles concluded in his report and testified at trial that appellant did not require hospitalization as long as he took his medication.

Appellant's first point on appeal is that the trial court erred in overruling his motion to suppress written and oral statements because said statements were improperly solicited after appellant declined to make a statement and because the statements were obtained by coercion. Appellant points out that following his arrest, he was brought to police headquarters around 6:00 a.m. At that time he declined to make a statement. The police resumed questioning of appellant at 1:40 p.m. that same day. The state contends that questioning was resumed because the police determined that appellant had given them a false name

and they wanted to find out why. Furthermore, the state maintains that the statement was voluntary.

In his contention that his statements should be suppressed, appellant relies on *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), for the proposition that the police failed to "scrupulously honor" his desire to remain silent and not be questioned. The facts in *Mosley* and in the present case are substantially similar. The Court in *Mosley* found:

A review of the circumstances leading to Mosley's confession reveals that his "right to cut off questioning" was fully respected in this case. Before his initial interrogation, Mosley was carefully advised that he was under no obligation to answer any questions and could remain silent if he wished. He orally acknowledged that he understood the *Miranda* warnings and then signed a printed notification-of-rights form. When Mosley stated that he did not want to discuss the robberies, Detective Cowie immediately ceased the interrogation and did not try either to resume the questioning or in any way to persuade Mosley to reconsider his position. After an interval of more than two hours, Mosley was questioned by another police officer at another location about an unrelated holdup murder. He was given full and complete *Miranda* warnings at the outset of the second interrogation. He was thus reminded again that he could remain silent and could consult with a lawyer, and was carefully given a full and fair opportunity to exercise these options. The subsequent questioning did not undercut Mosley's previous decision not to answer Detective Cowie's inquiries. Detective Hill did not resume the interrogation about the White Tower Restaurant robbery or inquire about the Blue Goose Bar robbery, but instead focused exclusively on the Leroy Williams homicide, a crime different in nature and in time and place of occurrence from the robberies for which Mosley had been arrested and interrogated by Detective Cowie. Although it is not clear from the record how much De-

tective Hill knew about the earlier interrogation, his questioning of Mosley about an unrelated homicide was quite consistent with a reasonable interpretation of Mosley's earlier refusal to answer any questions about the robberies.

*Michigan v. Mosley*, 423 U.S. at 104–05, 96 S.Ct. at 326–27, 46 L.Ed.2d at 321–22. In the present case, appellant was given his *Miranda* rights and invoked his right to remain silent during the interrogation concerning the rape charge. The questioning ceased immediately. After an interval of more than six hours, questioning resumed for a different crime, making a False Declaration in violation of § 575.060, when the police discovered appellant had given them a false name. The crime was different in nature, in time, and in place of occurrence from the rape. Again, appellant was given full *Miranda* warnings and he signed a form so acknowledging. During the second interrogation appellant made his oral and written statements.

The *Mosley* court concluded the following:

This is not a case, therefore, where the police failed to honor a decision of a person in custody to cut off questioning, either by refusing to discontinue the interrogation upon request or by persisting in repeated efforts to wear down his resistance and make him change his mind. In contrast to such practices, the police here immediately ceased the interrogation, resumed questioning only after the passage of a significant period of time and the provision of a fresh set of warnings, and restricted the second interrogation to a crime that had not been a subject of the earlier interrogation.

*Michigan v. Mosley*, 423 U.S. at 105–06, 96 S.Ct. at 327, 46 L.Ed.2d at 322. Thus, appellant's reliance on *Mosley* is misplaced.

██ In *State v. Harris*, 670 S.W.2d 526, 528–29[5] (Mo.App.1984), we stated that:

... after an accused has invoked his right to remain silent, he is not precluded from changing his mind and making a statement, nor are the police prohibited from inquiring into whether an accused has changed their mind. The law re-

quires only that the confession be voluntary and with understanding of the rights accorded by *Miranda*.

Here, it is clear that appellant changed his mind and made a statement concerning the rape while he was being questioned about another crime, making a False Declaration. Thus, the admission in evidence of appellant's inculpatory statements were within the guidelines of *Mosley*.

Appellant also contends that his statements were made involuntarily primarily because he was not given enough time to sleep between interrogations and because of the length of the second interrogation. We find no merit in this argument.

██ The state has the burden of showing by a preponderance of the evidence that the appellant's statements made while in custody were voluntarily given. *State v. Olds*, 569 S.W.2d 745, 751[4] (Mo. banc 1978). Absent a showing of special circumstances, the state need only make a prima facie showing of voluntariness. *State v. Thomas*, 596 S.W.2d 409, 412[4] (Mo. banc 1980). Before the first interrogation appellant was given his *Miranda* rights. He chose not to make a statement and the session ended. Thereafter, the police determined that appellant had given the police a false name. Approximately six hours later appellant was again given his *Miranda* rights, but he was questioned as to why he gave the police a false name. At no time during the first and second interrogation did appellant ask to see an attorney. The detective who questioned appellant testified that he did not threaten appellant or make any promises to coax a statement from appellant. Appellant did not testify and offered no evidence regarding the voluntariness of the statement or the state's evidence regarding same. As such, the state made a prima facie showing of voluntariness. Appellant's point is without merit.

In his second point on appeal, appellant argues that the trial court erred by allowing the testimony of Dr. Max Givon, the court-appointed psychologist, because Dr. Givon's written diagnosis of appellant varied from his trial testimony. Appellant

claims that under § 552.020, Rule 25.03, and Rule 25.08, the state had a duty to deliver to appellant any changes in Dr. Givon's evaluation before trial. Section 552.020 provides in pertinent part as follows:

> 2. Whenever any judge has reasonable cause to believe that the accused lacks mental fitness to proceed, he shall ... appoint one or more private psychiatrists or psychologists ... to examine the accused ... The order shall direct that a written report or reports of such examination be filed with the clerk of the court ...
>
> 6. The clerk of the court shall deliver copies of the report to the prosecuting or circuit attorney and to the accused or his counsel.

Rule 25.03 provides in pertinent part:

> (A) Except as otherwise provided in these Rules as to protective orders, the state shall, upon written request of defendant's counsel, disclose to defendant's counsel such part or all of the following material and information within its possession or control designated in said request:
>
> .    .    .    .    .
>
> (5) Any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments, or comparisons.

Rule 25.08 provides:

> If subsequent to complying with a request for disclosure or order of court, a party discovers information which he would have been required to disclose under the request or order, he shall furnish such additional information to opposing counsel, and if the additions are discovered during trial, the court also shall be notified.

Appellant argues that the state's failure to disclose the change in Dr. Givon's diagnosis resulted in unfair surprise and prejudice to appellant.

■ The duty to disclose is a continuing one and is not discretionary. *State v. Smothers*, 605 S.W.2d 128, 131[2] (Mo.

banc 1980). Assuming arguendo that the state violated its duty to disclose, we note that the inquiry turns on whether there was any fundamental unfairness or prejudice to appellant as a result of the state's failure to disclose Dr. Givon's change of diagnosis. The notion of fundamental unfairness or prejudice is to be measured by whether the evidence or the discovery thereof would have affected the result of the trial. *State v. Royal*, 610 S.W.2d 946, 951[13] (Mo. banc 1981).

Appellant contends that because his expert, Dr. Knowles, testified out of turn and was unavailable for rebuttal after Dr. Givon's testimony, appellant was thereby prejudiced. The state argues at great length in an attempt to reconcile the two diagnoses.

■ We conclude that appellant did not suffer fundamental unfairness or prejudice because Dr. Givon's conclusion remained the same despite the change in diagnoses. Dr. Givon found appellant, at the time of the crime, "retained his ability to know and appreciate the nature, quality, and wrongfulness of his conduct and was capable of conforming his conduct to the requirements of the law." Appellant knew of Dr. Givon's conclusion before the trial. Appellant's cross-examination of Dr. Givon and part of appellant's closing argument were directed toward Dr. Givon's change of diagnosis, his professional competence, and his credibility. The weight and credibility of expert witnesses is properly left to the jury. *State v. Guyton*, 635 S.W.2d 353, 360[22] (Mo.App.1982). Appellant's second point is denied.

In his last point on appeal, appellant maintains that the circuit attorney made an improper closing argument that was not supported by the evidence and was prejudicial and inflammatory. During the state's closing argument the following transpired:

> MR. WARZYCKI (assistant circuit attorney): There's one other thing I brought out during the testimony of these psychiatric experts. Neither one of them, ladies and gentlemen, not Knowles, not

Givon, neither one of them say he needs hospitalization. Knowles says it's in remission. And he's the only one at this point who's even saying he's got schizophrenic properties about himself.

The doctors don't want him. That came across loud and clear. If you find him not guilty by reason of mental disease or defect and the judge sends him to the hospital, bear that in mind. The doctors don't want him.

MR. MOORE (defense counsel): I'm going to object to this. There's no testimony of this. This is improper. That finding is made—

THE COURT: Overruled.

The trial court is afforded wide discretion in determining the permissible scope of counsel's argument to the jury and unless an abuse of discretion is demonstrated, to the prejudice of the accused, the case will not be reversed on appeal. *State v. Wood*, 596 S.W.2d 394, 403[27] (Mo. banc 1980). Clearly, it is impermissible for the state to argue matters not in evidence. *State v. Cannady*, 660 S.W.2d 33, 39[15] (Mo.App.1985). There was sufficient testimony in the transcript from Dr. Givon and Dr. Knowles indicating no need for hospitalization and the assistant circuit attorney's summary of the evidence as, "The doctors don't want him," is permissible. The trial court did not abuse its discretion by allowing the argument. Thus, appellant's point is unmeritorious.

Judgment affirmed.

CRANDALL and GRIMM, JJ., concur.